UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.

MICHAEL A. MORRISON

)
)
)
)
)

Crim. No. 2:18-cr-00175-NT

## PROSECUTION VERSION

If this case went to trial, the Government would prove the following facts beyond a

reasonable doubt:

1.      From 2005 to July of 2016, the defendant was the manager of the Trade Winds Health,

Swim and Tan Club (hereinafter "The Health Club") in Rockland, Maine.  The Health Club also

operated a physical therapy practice that did business as Coastal Physical Therapy.

2.      The Health Club was an enrolled provider for Medicare, MaineCare and the Veterans

Administration Fee Basis health care plan.  It also accepted patients who had health insurance

through various private insurance companies, including Anthem Blue Cross and Blue Shield.

These health insurance programs are all "heath care benefit programs" as that term is defined in

18 U.S.C. § 24(b).

### Count One – Health Care Fraud (18 U.S.C. § 1347)

3.      As manager, the defendant was responsible for billing claims for payment to health care

programs and insurance plans on behalf of the Health Club.  During the years 2014 through

2016, Medicare, MaineCare, the VA and Anthem Blue Cross Blue Shield only allowed claims

for medically necessary services that were actually rendered.  Moreover, none of these health

care programs or plans considered physical therapy services provided by a Physical Therapy

Aide to be medically necessary.  Instead, health care programs or plans only covered physical

therapy services provided by a licensed Physical Therapist or a licensed Physical Therapy Assistant.

4.      The defendant submitted health care claims electronically, using standardized diagnosis codes and procedure codes published by the American Medical Association in Current Procedural Terminology.  Health care programs or plans required claims to list the date of service, the provider's code, the diagnostic code, and the procedural code for the treatment or therapies.  In addition, certain procedures, including certain physical therapy procedures are billed according to units of time:  one unit of service for each 15 minutes of therapy time.

5.      The evidence in this case establishes that during the years 2014 through 2016, the defendant knowingly and willfully engaged in a scheme to defraud Medicare, MaineCare, the VA, and Anthem Blue Cross Blue Shield by submitting claims for payment on behalf of The Health Club that: (1) "upcoded" claims by exaggerating the length of time services were provided to patients; (2) were based on services provided by an unlicensed Physical Therapy Aide; (3) billed for services purportedly rendered by a Physical Therapist who was not in fact working for the Health Club on the dates of service listed on the claims, and (4) billed for services not rendered.

6.      The evidence of this scheme includes interviews with former employees and the owners of Trade Winds, plus paid claims data and progress notes from the Health Club documenting services purportedly performed by Health Club employees.  The total loss caused by this scheme to defraud as alleged in Count One is approximately $175,308.64.

7.      The evidence of this scheme to defraud includes progress notes and other patient records at the Health Club prepared by Health Club employees.  Physical Therapists and PT Assistants formerly employed by the defendant at the Health Club told investigators that when they treated

2

a patient, they documented the treatment in the progress notes. They recorded the name of the provider, the date of service, the type of therapy provided, the amount of time spent on each therapy, and the number of units of service that should be billed. The evidence establishes that the defendant "upcoded" numerous claims by billing for more units of service than were documented in the employees' progress notes. The loss caused by these "upcoded" claims is approximately $66,420.23.

8.     The evidence of the scheme to defraud also includes progress notes indicating that the defendant, who was not a licensed Physical Therapist or PT Assistant, provided services to patients. These claims for reimbursement all indicated that the services were provided by a licensed Physical Therapist or PT Assistant when in fact the progress notes established that the defendant was the provider. Services provided by the defendant, who was not a licensed Physical Therapist or PT Assistant, were not covered by Medicare, MaineCare, the VA, and Anthem. The amount of loss caused by these claims is approximately $65,048.76.

9.     The evidence of the scheme to defraud also includes the testimony of a former Physical Therapist, identified herein by her initials, SB. She worked briefly at the Health Club in 2009 and then the defendant rehired her on or about August 20, 2015. However, in 2014 and early 2015, the defendant submitted numerous claims for payment based upon progress notes and other patient records purportedly created by SB when in fact SB was not an employee of the Health Club as of the date of service listed on the claims. The loss caused by these false claims totaled approximately $7,327.99.

10.     The evidence of this scheme to defraud also includes claims submitted by the defendant for services purportedly provided by the lead Physical Therapist at the Health Club, identified herein by her initials, BC, when in fact BC was working at her second job for a different

3

employer.  The defendant also submitted claims for payment for sessions that were scheduled

with patients but were cancelled, or were otherwise deleted from the provider's schedule.  The

loss caused by these false claims is approximately $36,511.66.

Count Two – Embezzlement from a Health Care Benefit Program (18 U.S.C. § 669)

11.    As the Health Club's manager, the defendant was also responsible for purchasing

supplies for the business using a company credit card provided to him by his supervisor, the

owner and general manager of the Trade Winds Resort.

12.    He was also responsible for depositing the Health Club's business receipts into a business

bank account at Camden National Bank, across the street from the Trade Winds Resort.  When

the defendant was on vacation, the Trade Winds general manager made the deposits.  The Health

Club's receipts included checks and any cash or coin payments made by Health Club patients or

customers.

13.    The defendant purchased many items for the Health Club using his personal account at

Amazon.com.  He paid for these business related items using the Health Club's business credit

card.  In February of 2016, the Trade Winds owners hired a consultant to oversee the business

operations of the Health Club because it was not able to cover its expenses.  When the consultant

asked the defendant for purchase invoices that supported credit payments to Amazon.com, the

defendant provided him with altered Amazon records that changed the name of the items

purchased.

14.    Records obtained from Amazon.com show that the defendant made numerous purchases

for himself and his family, which he paid for with the Health Club's credit card.  These records

show that Amazon shipped these items to the defendant's home.  The amount of Health Club

funds embezzled by the defendant to pay for personal items totaled $26,251.55.

4

15.     A receptionist employed at the Health Club recorded cash receipts she collected in a cash receipts journal.  In September of 2015, the defendant told the receptionist not to maintain the cash receipts journal because the Health Club was not busy enough to keep receipts.  However, the receptionist continued to record cash receipts.  On a later date, this receptionist reported her suspicions to another employee that the defendant might be pocketing cash receipts.

16.     In approximately May of 2016, after the Trade Winds general manager learned about these suspicions, she went to Camden National Bank and asked the head teller when the last cash deposit was made into the Health Club bank account.  The teller replied that the last cash deposit was when the Trade Winds general manager made the deposit.

17.     A review of the Health Club bank records show the following total amounts of cash and coin deposits to the business  bank account:

| Year | Currency Deposits | Coin Deposits | Total |
|------|------------------|---------------|-------------|
| 2008 | $4,580.00 | $227.90 | $4,807.90 |
| 2009 | $17,384.00 | $605.12 | $17,989.12 |
| 2010 | $4,832.00 | $448.50 | $5,280.50 |
| 2011 | $6,013.00 | $491.00 | $6,504.00 |
| 2012 | $1,914.00 | $7.50 | $1,921.50 |
| 2013 | $1,876.00 | $32.00 | $1,908.00 |
| 2014 | $501.00 | $0.00 | $501.00 |
| 2015 | $252.47 | $128.34 | $380.81 |
| 2016 | $236.00 | $11.75 | $247.75 |

18.     The Government's conservative estimate is that the defendant embezzled cash and coin from the Health Club totaling approximately $1,500 per year, for each of the years 2014, 2015 and 2016.

        Dated:  December 7, 2018

HALSEY B. FRANK
UNITED STATES ATTORNEY

James W. Chapman, Jr.
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street Plaza, East Tower
Portland, ME 04101
(207) 780-3257
James.W.Chapman@usdoj.gov